626 F.2d 1022

## In re FTC LINE OF BUSINESS REPORT LITIGATION.

### Appeal of AMERICAN CYANAMID CO. et al.

## In re FTC CORPORATE PATTERNS LITIGATION.

Nos. 77–2099, 77–2100.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1978.

Decided May 1, 1980.

William Simon, Washington, D. C., with whom Stuart H. Harris, Harold F. Baker and John DeQ. Briggs, Washington, D. C., were on the brief, for appellants.

John M. Wood, Washington, D. C., for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and PRATT,* United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Two law firms dispute the amount that one is owed as reimbursement [1] in its role as liaison counsel [2] in complex litigation over the Federal Trade Commission's Line of

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. We explain our use of "reimbursement" in note 14 *infra.*

2. Section 1.90 of the *Manual for Complex Litigation* (West ed. 1977) provides in pertinent part:

When there are several parties on one or both sides of the case represented by different counsel, the court is confronted with a problem in communicating with counsel and in securing responses from counsel on procedural questions. If these circumstances appear at the preliminary .pretrial conference, the court should consider requesting counsel for the parties on each side to select one or more of their number as liaison counsel.

Business Report (LB) and Corporate Patterns Report (CPR) programs.[3] The District Court, without a hearing, ordered one, Howrey & Simon, to pay the other, Reed Smith Shaw & McClay (Reed Smith), sums in excess of $42,000,[4] and Howrey & Simon appeals. We find the court's disposition informationally inadequate for full appellate review, and accordingly remand the record for additional explanation.

## I. BACKGROUND

The series of events giving rise to the instant contest began in 1975 when a number of corporations filed civil actions in the District Courts for the Southern District of New York and the District of Delaware challenging the LB and CPR programs. Responsively to recommendations set forth in the *Manual for Complex Litigation*,[5] the Delaware District Court elected the expedient of liaison counsel to avoid needless duplication of effort in the cases pending before it.[6] So, in 1976, the court entered an order appointing Reed Smith, the plaintiffs'

nominee, in that capacity on terms negotiated by them.[7]

The order authorized Reed Smith to receive and distribute to counsel for other plaintiffs documents from the court and from defendants, to coordinate appearances of counsel at hearings and court conferences, to call meetings among plaintiffs' counsel for various purposes, and to perform other administrative functions "expressly authorized by further Order of the Court."[8] The order also included this further provision:

> For the foregoing administrative duties and functions, as liaison counsel shall perform pursuant to Order of the Court, liaison counsel shall be reimbursed periodically, not less often than quarterly, by plaintiffs, per capita, for the expense and time involved in preparation, duplication and distribution of court orders, notices, and other papers designated for distribution by liaison counsel to plaintiffs and for other administrative services rendered, pursuant to paragraphs 1 through 4 above or other Order or direction of the Court.[9]

---

3. The Commission's LB and CPR surveys, undertaken pursuant to 15 U.S.C. § 46(b) (1970), extended from 1972 through 1976. They were an ambitious endeavor to assemble statistical information on the internal workings of several hundred large American corporations. The surveys met with persistent opposition, and the result has been a steady stream of litigation. Our opinion in *Appeal of FTC Line of Business Report Litigation*, 193 U.S.App.D.C. 300, 595 F.2d 685, *cert. denied*, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978), and the Third Circuit's in *A. O. Smith Corp. v. FTC*, 530 F.2d 515 (3d Cir. 1976), delineate the background and procedural history of the struggle.

4. *FTC Corporate Patterns Report Litigation*, Misc. No. 76–126 (D.D.C. Oct. 20, 1977) (memorandum and order), Joint Appendix (J. App.) 68 [hereinafter cited as Memorandum and Order].

5. See note 2 *supra*.

6. Affidavit of Lee A. Rau ¶¶ 8–10, J. App. 182–183. Rau, an attorney with Reed Smith, was the individual who actually served as coordinator under both the Delaware and District of Columbia orders hereinafter described.

7. *A. O. Smith Corp. v. FTC*, C.A. No. 75–15 (D.Del. Mar. 3, 1976) (order appointing liaison

counsel), J. App. 187. See Affidavit of Lee A. Rau ¶ 8, J. App. 182. The order also appointed as local liaison counsel the firm of Potter, Anderson & Corroon, which is not involved in the instant controversy.

8. *A. O. Smith Corp. v. FTC, supra* note 7 (order appointing liaison counsel). The text of the order is almost a verbatim copy of the form recommended in the *Manual for Complex Litigation, supra* note 2, at 178. Such differences in duties of liaison counsel as there are between the form and the order are not germane to this appeal.

9. *Id.* This paragraph likewise was a near-verbatim reproduction of the *Manual* model, with the notable omission of additional language there suggested:

> Liaison counsel shall report to the Court periodically, not less often than ____, his time and expenses expended in performing the duties imposed on him by Order of the Court, and, upon approval by the Court, he shall report his accounts to all with notice to each plaintiff of its pro rata share of the cost.

*Manual for Complex Litigation, supra* note 2, at 178. The order entered made no provision whatsoever for judicial approval of liaison counsel's charges prior to billing, and had it done so the imbroglio before us might never

Reed Smith issued its first statement under this provision about two months later, covering February–April, 1976,[10] and Howrey & Simon promptly paid its $7,110 share without apparent objection.[11] On August 30, 1976, Reed Smith sent Howrey & Simon a second statement, this time showing $11,791.70 due,[12] and the latter immediately requested an itemized breakdown.[13] Afterwards, as relations between them began to deteriorate, Howrey & Simon refused to pay anything unless and until Reed Smith deleted reimbursement for items [14] that, in the opinion of Howrey & Simon, were not within the scope of the Delaware court's order.[15] This Reed Smith would not do,[16] and the two firms, lawyerly negotiating

skills notwithstanding, found themselves at an impasse.

Meanwhile, the amount in dispute continued to grow. By April of 1976, all of the LB and CPR litigation in Delaware and the Southern District of New York had been transferred to the District Court for the District of Columbia.[17] Like its predecessor in Delaware, the District of Columbia court felt a need for liaison counsel, and it too asked the plaintiffs to draft a proposed order.[18] Ultimately, the court entered orders appointing Reed Smith as coordinating counsel in both cases and, over Howrey & Simon's objection, incorporating the identical reimbursement provision that had appeared in the Delaware order.[19] As might

have occurred. We heartily recommend consideration of inclusion in further liaison-counsel appointment orders of such a provision, for the extra burden thus imposed might well be far outweighed by avoidance of litigation over reasonableness of the charges.

**10.** Letter, Edward T. Tait to Stuart H. Harris, May 28, 1976, J. App. 190, and enclosure, J. App. 191.

**11.** Letter, Stuart H. Harris to Edward T. Tait, June 3, 1976, J. App. 192. Cf. Letter, Stuart H. Harris to Richard F. Corroon, June 28, 1976, J. App. 193 (making payment, similarly without objection, to local liaison counsel).

**12.** Statement of August 30, 1976, J. App. 196.

**13.** Letter, Harold F. Baker to Edward T. Tait, Sept. 9, 1976, J. App. 197.

**14.** We recognize that the word "reimburse" in its usual sense contemplates a repayment of costs incurred—actual out-of-pocket expenses—and ordinarily does not include any element of profit. One of Howrey & Simon's contentions is that in some items Reed Smith sought compensation—more than simply costs—instead of reimbursement. Since we do not reach that issue at this time, see note 28 *infra* and accompanying text, throughout this opinion we speak in terms of reimbursement, but that is not to be taken as necessarily an accurate characterization or as a judicial endorsement of any of Reed Smith's claims, and most certainly not as the intimation of a view on the propriety of compensation to liaison counsel.

**15.** See, e. g., Letter, Harold F. Baker to Lee A. Rau, Oct. 5, 1976, J. App. 198–199 ("I suggest that you make the appropriate adjustments . . . and send us a new statement"); Letter, John DeQ. Briggs to Lee A. Rau, Nov. 22, 1976, J. App. 200–201 (summary of Howrey & Simon's position).

**16.** Letter, Lee A. Rau to John DeQ. Briggs, Nov. 24, 1976, J. App. 202–204 ("[i]n sum, we continue to believe that the final Delaware liaison bill as finally stated is proper"). That letter also warned that unless the parties resolved the matter by the end of November, 1976, Reed Smith would likely seek judicial enforcement of its demand for payment. *Id.* at 3, J. App. at 204.

**17.** See Civil Docket, *In re FTC Corporate Patterns Report Litigation*, Misc. No. 76–0126, at cover page, J. App. 1; Civil Docket, *In re FTC Line of Business Report Litigation*, Misc. No. 76–0127, at cover page, J. App. 36.

**18.** *FTC v. Air Prods. & Chem., Inc.*, Misc. No. 76–64 (D.D.C. July 14, 1976) (memorandum order), J. App. 281.

**19.** *In re FTC Line of Business Report Litigation*, Civ. No. 76–835 (D.D.C. July 30, 1976) (pretrial order), at ¶ 14, J. App. 236–238; *In re FTC Corporate Patterns Report Litigation*, Civ. No. 76–842 (D.D.C. July 30, 1976) (pretrial order), at ¶ 14, J. App. 239–241. See text *supra* at note 9. The cited paragraphs of the two orders are identical.

Howrey & Simon had two basic objections to the orders:

First, we submit the proposed formula for reimbursement is inequitable. There can be no justification for requiring . . . that a law firm representing six corporate parties bear six times the expense of a firm representing one corporate party, although each firm would receive but one copy of the same communication.

Secondly, [the order language] is imprecise to the extent it might require coordinating counsel to seek reimbursement for duties other than those ministerial duties described in paragraph A. For example, paragraph B

have been predicted, wrangling over billings continued after the new order,[20] and neither correspondence nor face-to-face discussions succeeded in resolving the conflict.

██ Finally, in July, 1977, Reed Smith moved the District Court for an order directing Howrey & Simon to pay all amounts allegedly due.[21] Both parties filed lengthy memoranda and voluminous documentation in support of their respective positions. Howrey & Simon requested a hearing on Reed Smith's motion [22] and raised essentially three objections: that the District Court should have allocated reimbursement on a per-firm rather than a per-client basis, that a substantial portion of the reimbursement sought was for activities beyond the compass of the court's order, and that much of

what was authorized by the order had been billed at disproportionately high rates.[23] In particular, Howrey & Simon urged that amounts billed at Reed Smith's usual commercial rates were actually attorney's fees, and as such were not properly awardable.[24]

The District Court reached its decision without a hearing. In a memorandum opinion, the court held that it was empowered to require reimbursement, and in the proportions previously set, and that it was "readily apparent that [Reed Smith's] services and disbursements were well within the scope of the authority granted by [its earlier] order." [25] The court also noted that Howrey & Simon was the only firm that had not paid its allocated share of liaison counsel's claimed expenses.[26] Resultantly,

---

provides for reimbursement for "time" spent by coordinating counsel in "preparation" and distribution of "other papers designated by coordinating counsel" and "for other administrative services rendered."
Letter, Howrey & Simon by J. Wallace Adair to Hon. Thomas A. Flannery, July 27, 1976, at 2, J. App. 206 (footnotes omitted). This letter was sent before any dispute arose between Howrey & Simon and Reed Smith over amounts charged under these orders, but it was undeniably a precursor of future disagreements.

**20.** On December 21, 1976, Reed Smith's bill to Howrey & Simon exceeded $10,000 for the LB litigation and $7,000 for the CPR litigation. Exhibits T & U, J. App. 218, 219. On March 4, 1977, Reed Smith billed an additional $7,848 for the LB litigation and $5,468 for the CPR litigation. Exhibits V & W, J. App. 220, 221. Howrey & Simon declined to pay for the same reasons advanced for nonpayment of the final billing in the Delaware litigation. See, e. g., Letter, Harold F. Baker to Lee A. Rau, Mar. 29, 1977, at 2, J. App. 223 ("[w]e simply cannot believe that the Court envisioned fees in the order of magnitude which you want to levy on our clients"); Letter, Lee A. Rau to Harold F. Baker, May 6, 1977, at 3, J. App. 227 ("such an inference [that Reed Smith had overcharged] is both unwarranted and erroneous"); Letter, Harold F. Baker to Lee A. Rau, May 23, 1977, at 1, J. App. 233 ("[w]e have received your letter of May 6 and regret that nothing stated therein serves to change our views").

**21.** See Civil Docket, *In re FTC Corporate Patterns Report Litigation, supra* note 17, at 25, J. App. 28; Civil Docket, *In re FTC Line of Business Report Litigation, supra* note 17, at 21, J. App. 60.

**22.** Reed Smith suggests that Howrey & Simon "failed to comply with the procedural requirements for requesting . . . a hearing." Brief for Appellees at 29–30. We disagree. Rule 1–9(f) of the District Court in pertinent part provides that "a party may in his motion or opposition, specifically request an oral hearing. . . ." In its opposition to Reed Smith's motion to enforce payment, Howrey & Simon declared at the outset that "[u]nder the law prevailing in this Circuit and elsewhere, a reasonably specific accounting is required, as is an evidentiary hearing and the opportunity for cross-examination, if necessary." Opposition to Motion to Enforce Order Appointing Liaison Counsel and Orders Appointing Coordinating Counsel, Aug. 15, 1977, at 2, J. App. 101. In the argument section of its memorandum, Howrey & Simon reiterated, "[i]n no event can Reed Smith's motion be granted on this record, and until an opportunity for an evidentiary hearing has been accorded." *Id.* at 14, J. App. 113. And finally, in the conclusion of the memorandum, Howrey & Simon stated that "a hearing may be required upon the completion of discovery, which should be completed within the next month unless such discovery is resisted by movant." *Id.* at 28, J. App. 127. Although a more explicit demand for a hearing might be preferable, these requests satisfied the requirements of Local Rule 1–9(f).

**23.** *Id.*

**24.** *Id.* at 19–26, J. App. 118–125.

**25.** Memorandum and Order, *supra* note 4, at 4, J. App. 71.

**26.** *Id.* at 2, J. App. 69.

Howrey & Simon was directed to pay most of Reed Smith's charges, which aggregated more than $42,000.[27]

## II. THE OBJECTIONS

Howrey & Simon presses here essentially the same arguments it previously advanced in the District Court. We turn now to address each in turn, and that, we find, we can do with relative brevity.

### A. *The District Court's Power*

█ We have no doubt as to the District Court's authority to order reimbursement of liaison counsel on appropriate items or to allocate the responsibility for reimbursement in any reasonable manner.[28] Courts are inherently empowered to control their dockets,[29] and to that end to appoint liaison counsel and to assure that counsel will be reimbursed for his financial outlay.[30] To the extent that objection is registered to raw judicial power in these areas, we find it wholly unavailing.

### B. *The Manner of Reimbursement*

█ The District Court's decision to require reimbursement on a per-client rather than a per-firm basis was also well within its authority. Howrey & Simon contends that because liaison counsel's services were rendered directly to law firms, this method of allocation is unfair.[31] True it is that because Howrey & Simon has more clients than any other firm involved in the litigation, the combined assessments against its group of clients are greater than the aggregate levy on clients of any other firm.[32]

---

**27.** *Id.* at 4–5, J. App. 71–72.

**28.** Howrey & Simon points to several decisions on attorney's fee awards and argues that they limit judicial power to order reimbursement of liaison counsel. Brief for Appellants at 12–19. These cases are relevant only if the District Court has approved charges properly classifiable as compensation rather than expense items, something we cannot ascertain on the present record, see Part II(C) *infra*. It is argued that reimbursement items are attorney's fees, and as such are impermissible, when they represent services performed by an attorney and are billed at the same hourly rate that any legal work done for a paying client would be. But Howrey & Simon offers no authority to support this position, and it certainly seems logical that the nature of the work performed, and not the amount demanded for it, determines whether a given charge is properly to be denominated an attorney's fee. We need not explore the concept of attorney's fees now, see Part II(C) *infra*, but we note that the cases Howrey & Simon cites involved no more than adjudications over amounts due for professional representation or legal advice—in short, for peculiarly legal services. We leave it to the District Court on remand to explain whether its order encompasses payment for legal as well as administrative activities. If, as appears from the order under review, the tasks assigned Reed Smith under the liaison counsel order were wholly administrative in nature, see text *infra* at note 39, it follows that to the extent that Howrey & Simon complains that Reed Smith has billed for legal rather than administrative services, the only proper objection is that the activity billed was outside of the scope of the District Court's appointment order. See notes 33–39 *infra* and accompanying text.

**29.** As the Supreme Court observed in *Landis v. North American Co.,* 299 U.S. 248, 254–255, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158 (1936), there is "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." See *Dellinger v. Mitchell,* 143 U.S.App.D.C. 60, 64, 442 F.2d 782, 786 (1971).

**30.** Indeed, the commonly stated judicial rationale for the appointment of liaison counsel is the necessity for proper and efficient management of the court's docket. See, *e. g., Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 774–775 (9th Cir. 1977); *MacAlister v. Guterma,* 263 F.2d 65, 67–69 (2d Cir. 1958).

**31.** Brief for Appellants at 42–44.

**32.** In its brief, Howrey & Simon states that it represents 35 and 39 corporate clients in the LB and CPR proceedings, respectively. Brief for Appellants at 7. According to a letter accompanying Reed Smith's initial reimbursement statement, Howrey & Simon represented 40 of the 88 corporations in the LB and CPR litigation. Letter from Edward T. Tait to Stuart H. Harris, *supra* note 10. In any event, it is clear that Howrey & Simon's group of complaining corporations was larger than that of any other law firm involved.

Reed Smith's practice of combined billing for the LB and CPR proceedings was another subject of the bickering. See, *e. g.,* Brief for Appellants at 41–42. Since we will remand for

But every client pays the same amount, and the District Court's paramount concern—surely immune to condemnation—was fairness to the litigants. Since the economic burden of reimbursement is the client's and not the attorney's, no apparent harm to Howrey & Simon flows from the court's scheme. We do not say that the court could not have adopted a different plan. We do say, however, that the method of allocation chosen by the court was reasonable and within the ambit of its discretion.

### C. *The Amounts Charged*

 This leaves only the question whether Reed Smith's reimbursement items emanated from activities within the scope of the appointment orders and, if so, the further question whether the amounts requested were reasonable. The District Court expressly held that the bulk of the charges were both authorized and fair.[33] The court did not, however, make factual findings or articulate reasons with sufficient particularity to enable suitable review of its holding.[34]

The problem thus confronting us is similar to another which we addressed in the recent past. In *Evans v. Sheraton Park Hotel*,[35] discussing an award of attorney's fees by the District Court, we said:

.We believe that a meaningful review requires a record that elucidates the factors that contributed to the fee decision and upon which it was based. Certainly it is not conducive to appropriate appellate review where, as here, the reviewing tribunal is completely in the dark as to what the trial judge found concerning the time and labor involved, the rate of compensation, and the aspects he may have deemed of significance.[36]

In the case before us, the District Court's brief discussion of Howrey & Simon's claims of ultra vires and unreasonableness leaves us in much the same difficulty. The court's opinion quoted a recent Third Circuit decision[37] for the proposition that courts should not " 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation.' "[38] The

---

additional findings and reasons, we have no cause to examine the contentions that this sort of billing was improper.

**33.** Memorandum and Order, *supra* note 4, at 2, 4, J. App. 69, 71.

**34.** "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." Fed.R.Civ.P. 52(a). Nevertheless, a statement of the factual findings on which the court based its decision often is helpful to appellate review. See, *e. g., Tygrett v. Washington*, 177 U.S.App.D.C. 355, 359 n.17, 543 F.2d 840, 844 n.17 (1974). Moreover, "regardless of what the rule in terms requires, whenever decision of a matter requires the court to resolve conflicting versions of the facts, findings are desirable and ought to be made." 9 C. Wright & A. Miller, Federal Practice § 2575, at 649 (1971). See *Von der Heydt v. Rogers*, 102 U.S.App.D.C. 114, 115, 251 F.2d 17, 18 (1958) ("[a]bsent specific findings to be reviewed in light of the evidence, we cannot make an adequate assessment of [the] issue"). Though findings are not normally required, then, we may properly remand for further elucidation when review would be substantially hindered without them. See text *infra* at note 36. Indeed, that has long been standard practice in this circuit.

**35.** 164 U.S.App.D.C. 86, 503 F.2d 177 (1974).

**36.** *Id.* at 97, 503 F.2d at 198.

**37.** *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976). This case is usually referred to as *Lindy II. Lindy I*, an earlier decision on attorney's fees in the same multidistrict proceeding, is reported at 487 F.2d 161 (3d Cir. 1973).

**38.** Memorandum and Order, *supra* note 4, at 4, J. App. 71 (quoting *Lindy II, supra* note 37, at 116). It is important to evaluate the quoted passage in its full context:

We find it necessary also to observe that we did not [in *Lindy I* ] and do not intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation. . . . *Once the district court determines the reasonable hourly rates to be applied*, for example, it need not conduct a minute evaluation of each phase or category of counsel's work.

*Lindy II, supra* note 37, at 116 (emphasis added). It thus becomes evident that the Third Circuit was not advocating a total hands-off attitude in evaluating the reasonableness of fees charged by counsel. Moreover, taken as a

District Court then proclaimed that "in fact, because it is concerned only with administrative matters and not professional representation, the court's review will be even more limited." [39] Concluding at this point, the court merely stated that Reed Smith had sufficiently itemized its expenses, and ordered Howrey & Simon to pay its allotted share.

This exposition explains neither the analysis nor the synthesis underlying the court's ruling. It thus does not afford an adequate foundation for appellate review on whether the activities for which reimbursement is claimed were within the scope of the appointment orders and, if so, the reasonableness of the amounts claimed. We therefore remand the record for more explicit findings of fact and conclusions on these two issues.[40]

*So ordered.*

---

whole, the *Lindy* decision attests to the judicial feeling that a court conducting a review of fees should put considerable effort into determining the accuracy of the billing and even the quality of the attorney's work. See, *e. g., id.* at 117 ("the court should appraise the manner in which counsel discharged his or her professional responsibilities"); *id.* at 118 ("[i]f . . . the court is persuaded that an increase or decrease . . . is warranted, it should identify those factors supporting its conclusions, state the specific amount by which the basic fee should be altered . . . , and give a brief statement of the reasons therefor").

**39.** Memorandum and Order, *supra* note 4, at 4, J. App. 71. The problem with this approach is that the most serious question raised by Howrey & Simon was whether the billing was for administrative activities and thus was within the purview of the order appointing liaison counsel, or rather was for legal services and thus was beyond its contemplation. Only after stating that judicial review would be limited was it "readily apparent" to the District Court that the charges were for activities authorized by the appointment order. That conclusion cannot acceptably be based on the premise stated, for the premise incorporates the conclusion.

**40.** The District Court will, of course, retain full authority to convene a hearing as a possible aid to achieving the objectives of our remand. That we leave to its decision in the first instance. Manifestly, no useful purpose can be served by considering at this stage the hearing issue, see note 22 *supra* and accompanying text, raised by Howrey & Simon.