**In re AIR CRASH DISASTER NEAR SAIGON, SOUTH VIETNAM, ON APRIL 4, 1975 (Two Cases).**

**Appeal of Judith GORE as Guardian Ad Litem of Donald Dione, Jr., et al. (Two Cases).**

**Nos. 80–2428, 81–1105.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1982.

Decided Feb. 12, 1982.

Ian Herzog with whom Ned Good, Los Angeles, Cal., was on the brief for appellants.

Raymond Donald Battocchi with whom Isaac N. Groner, Judith E. Olingy and Daniel S. Goodman, Washington, D.C., were on the brief for Plaintiffs' Lead Counsel Committee.

Carroll E. Dubuc, Aidan D. Jones and Temple L. Ratcliffe, Washington, D.C., entered appearances for Lockheed Aircraft Corp.

Before BAZELON, Senior Circuit Judge, and TAMM and WALD, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case comes in the aftermath of a crash of a Lockheed C5A aircraft in Vietnam in 1975. Appellants here challenge the apportionment of lead and liaison counsel costs in the multidistrict litigation which resulted from the crash. They also challenge the propriety of the district court's order that the plaintiff's attorneys pay those costs—out of their own pockets, if necessary. We reject the first challenge but, under the particular facts of this case, agree with the second and consequently remand to the district court with instructions to dissolve that court's order to show cause why the attorneys should not be held in contempt for their initial failure to pay costs.

Plaintiff is the guardian ad litem of a minor whose father was killed in the crash. She retained two attorneys (California Counsel) to file a wrongful death action against Lockheed in Los Angeles Superior Court. Lockheed removed the case to the United States District Court for the Central District of California, from which it was transferred in 1976, to the United States District Court for the District of Columbia, where consolidated multidistrict proceedings involving numerous claims arising out of the same crash were already taking place.

Before the California case was transferred to the district court here on March 18, 1976, lead and liaison counsel (Lead Counsel) were appointed by the District of Columbia district court to represent the common interests of all American plaintiffs, who eventually numbered twenty-three. On June 4, 1976, the district court entered Pretrial Order No. 4, which provided that all such plaintiffs should share equally in the costs incurred by Lead Counsel until termination of their respective actions. The first plaintiff to settle would be liable for $\frac{1}{23}$ of all expenses incurred before his settlement; the second would be liable for $\frac{1}{22}$ of unreimbursed expenses incurred before his settlement; and so on up to the last-settling plaintiff, who would be liable for all remaining unreimbursed expenses. The pretrial order specifically provided for each plaintiff's *counsel* to "be charged for" Lead Counsel's expenses, Pretrial Order No. 4 at ¶ (2)(d), Appellees' Appendix at 1, 2, although the obligation to pay expenses was the plaintiffs', *id.* at ¶ (2)(e), Appellees' Appendix at 3. The order also provided for periodic notification by Lead Counsel to plaintiffs' counsel of costs incurred, *id.* at ¶ 7, Appellees' Appendix at 4, and that any plaintiff dissatisfied with the assessment formula should file an objection with the court. *Id.* at ¶ (2)(c), Appellees' Appendix at 2. At oral argument, California Counsel asserted that they had in fact noted their objection in a letter to the district judge and in a formal filing. The letter, however, objected only to the provision in the order for 5% attorneys' fees for Lead Counsel, and the subsequent filed objection, although addressed to Pretrial Order No. 4, asserted that the district court lacked jurisdiction but did not raise objections to the assessment formula in dispute here.

In September 1979, California Counsel and counsel for Lockheed settled their case. Lead Counsel, following the district court's apportionment formula, informed California Counsel that their share of expenses was $12,048.86. California Counsel thereupon presented the settlement to the Los Angeles Superior Court, in accord with the requirements of the District of Columbia court's pretrial order that counsel's authority to compromise claims of minor plaintiffs be approved by the appropriate probate court, and that the fairness of settlements

be represented to such court. Pretrial Order No. 6 at ¶ 4, Appellee's Appendix at 17, 18. California Counsel refused, however, to represent that the $12,000 costs charged to their client were reasonable. California Counsel explain their failure to do so on the ground that their share of Lead Counsel costs seemed excessive to them in proportion to the amount of the settlement and thus they could not conscientiously make a representation of reasonableness to the state court although the settlement in other respects was fair. Thus it was that the Superior Court, in mid-1980, approved only the gross amount of the settlement, but not the costs, instead requesting the district court and Lead Counsel to provide a detailed break-down and justification of the costs.[1]

California Counsel consequently filed "A Petition to Justify Costs" with the district court here on July 11, 1980. Lead Counsel responded by asking the district court to order California Counsel to pay the costs. In late October 1980, the district court granted Lead Counsel's motion and directed California Counsel personally to pay those costs by November 15, 1980. California Counsel did not do so, however, but instead filed motions for reconsideration on November 12 and 18, and finally, on November 24, a notice of appeal.[2] On January 22, 1981, the district court, at Lead Counsel's request ordered California Counsel to show cause why they should not be held in contempt.

A week later, California Counsel paid the costs under protest prior to this court's decision, later the same day, to stay the order to show cause. The district court then decided to hold contempt proceedings in abeyance, and this court, on California Counsel's motion, dissolved the stay.

In this appeal, appellants challenge two aspects of the district court's order. First, they claim that the costs assessed against them were excessive because the apportionment formula does not properly differentiate between large and small recoveries. Second, they claim that costs should not be assessed against them (California Counsel) personally.

■ We find that the district court did not abuse its discretion in denying appellants' motion to alter the allocation formula set forth in Pretrial Order Number 4 to require that Lead Counsel costs be assessed in proportion to each claimant's recovery. This court has heretofore held "reasonable and within the ambit of [the district court's] discretion" a method of cost allocation that requires liaison counsel to be reimbursed by plaintiffs per capita. *In re FTC Line of Business Report Litigation*, 626 F.2d 1022, 1028 (D.C.Cir.1980). Pretrial Order No. 4 follows a per capital allocation but with a modification, which we deem reasonable, that plaintiffs not be obligated for costs incurred after termination of their particular litigation.[3]

1. It appears from oral argument, though not from the record, that after the initiation of contempt proceedings the California Superior Court agreed to approve the costs if the allocation formula were approved by this court.

2. The dates upon which we rely are generally those that appear on the district court's docket. California Counsel consistently refer to documents as having been filed on different dates.

3. Even if an appellate court's 20–20 hindsight identified a superior method, it would engender chaos to implement it retroactively at this stage. From 1976 to 1980, numerous expenses were incurred and reported to plaintiffs' counsel by Lead Counsel, and numerous reimbursements to them were made by other plaintiffs upon settling their claims, all on terms laid down in Pretrial Order No. 4. These arrangements would have to be renegotiated and could

be substantially changed if this court were now to reverse the district court and revise its cost-allocation formula. In any event, there appears no sound reason for so doing as none of the other suggested bases for allocating costs guarantees greater equities.

The alternative process most frequently mentioned by the parties is the "amount-recovered" method, by which each plaintiff is liable to Lead Counsel for the proportion of costs that that plaintiff's recovery bears to the sum of all recoveries. If the twenty-three plaintiffs recovered $10,000,000 altogether from Lockheed, a plaintiff settling for $100,000 would be liable for only one percent of Lead Counsel's costs. The advantage of this method is that it makes parties bear costs in proportion to the dollar benefit actually received from the litigation. Large costs that would be justified in large single-plaintiff cases, but not in small single-

■ We further find, however, that the district court erred in ordering California Counsel to personally pay the costs and in initiating contempt proceedings against them for failure to do so. Although this court has previously approved charging liaison counsel costs against an individual plaintiff's counsel in the context of multidistrict litigation, this court's approval was premised on the assumption that "the economic burden of reimbursement is the client's and not the attorney's." *In re FTC Line of Business Report Litigation*, 626 F.2d at 1028. Such did not appear to be the case here. By order of the district court, settlements made on behalf of minor plaintiffs were to be submitted to an appropriate probate court. At the time the district judge ordered California Counsel to pay, the California court had not found the costs reasonable,[4] and, under California law, counsel would presumably not be entitled to reimbursement from their client.[5] Payment by California Counsel, under these circumstances, would not be simply an "advance," as appellees claim, but rather an imposition of personal liability on the attorneys. The authority to tax costs personally against an attorney is vested in the federal courts by the Federal Rules and statute. *See Asai v. Castillo*, 593 F.2d 1222, 1225 (D.C.Cir.1978). These authorities sanction personal liability of counsel only in specific

plaintiff cases, are still incurred, but small-claim plaintiffs bear only a small portion of them. This method, however, has practical problems. It delays determination of cost liability until every plaintiff's case has been resolved; only then can ratios be determined. In this case, furthermore, all settlement amounts were under seal, so individual plaintiffs settling early on would have no way of knowing or even guessing intelligently as to their eventual cost liability. Hence, they could not set the money aside or close out their accounts with Lead Counsel.

Finally, the "amount recovered" method takes no account whatsoever of the speed with which a case is settled, and the resultant cost avoidance (or lack of benefit from lead and liaison counsel's subsequent efforts). The plaintiff who settles when $1,000 of costs have been incurred pays as much as the one who settles for the same amount after getting the benefit of $100,000 worth of discovery and other efforts.

A third method of cost allocation suggested, though not explicitly discussed, would divide the plaintiffs into various classes (*e.g.*, widows, orphans, parents) and, based on the expected relative values of each type of claim, assess different proportions of costs to members of different classes. This avoids the delay problems of the amount-recovered method, but it has other administrative problems. How does one determine, a priori, the relative values of widow, orphan, and parent cases? It is also unclear how this approach would solve the equity problems within classes either. If very distinct subclasses exist among plaintiffs, the most equitable course might be for the district court handling the multidistrict proceeding to appoint separate lead and liaison counsel for those subclasses and for the plaintiffs in those subclasses to pay only the costs incurred by their own lead counsel. *Cf.* Fed.R.Civ.P. 23(c)(4)(B) (subclasses in class actions). For example, American and Vietnamese plaintiffs were separately represented in this action.

The method adopted by the district court here is not without problems, as appellants correctly point out. Unless there is some correlation between the amount recovered and the costs borne, small cases may pay a disproportionate (to their recovery) amount of costs. It is not impossible to imagine a case settled late but for a relatively small amount in which costs plus attorneys fees would actually exceed the total recovery. This method of cost allocation might thus be inappropriate for cases in which a large number of plaintiffs really do have claims of very different magnitudes. Nonetheless, it does not appear, in the circumstances presented by the record in this case, to have been an inequitable method of allocating expenses. Moreover, because plaintiffs are obligated to pay for a share of only those costs incurred prior to the termination of their case, there is a direct relationship between the amount of costs assessed in a particular case and the amount of costs actually expended to bring that case to a successful resolution. And at oral argument California Counsel conceded that their plaintiff had benefited from the efforts of Lead Counsel.

4. The California Superior Court in fact indicated its inclination to find the costs unreasonable absent justification which the district court declined to proffer.

5. *See* Reply to Lead & Liaison Counsel's Opposition to Petition to Justify Costs, Appendix to Appellants' Opening Brief ["App."] at 37, 42. The form that California attorneys must submit for approval of a compromise of a minor's claim requires a representation that costs are reasonable. Superior Court of California, County of Los Angeles, Petition of Guardian ad litem for Compromise of Disputed Claim of Minor, App. at 24, 25.

instances of bad faith actions of the attorney not present in this case. *E.g.,* Fed.R. Civ.P. 37(a)(4), 37(b), 37(d); 28 U.S.C. § 1927. *See* 10 C. A. Wright & A. Miller, Federal Practice and Procedure § 2670 (1973 & Supp.1980). The district court, therefore, was not warranted in assessing costs against California Counsel personally at this juncture.[6] Consequently, there remains no basis for civil contempt proceedings. *See United States v. United Mine Workers,* 330 U.S. 258, 294–95, 67 S.Ct. 677, 696–97, 91 L.Ed. 884 (1947); 7 Moore's Federal Practice ¶ 65.02[4] ("[C]ivil contempt, which is remedial in nature, falls with the reversal of the injunction.").

According to the representations of California Counsel, the California Superior Court has now agreed to approve costs upheld by this court. Therefore, there is no longer a cloud on California Counsel's entitlement to reimbursement from their client. The reasons for invalidating the October order having been eliminated, the way is clear for the district court to impose costs under the terms of Pretrial Order No. 4.[7] We remand to the district court for proceedings not inconsistent with this opinion.

---

6. We do not in any way mean to suggest that the district court was prevented from otherwise enforcing the provision in Pretrial Order No. 4 that "Each plaintiff shall be obligated for his or her proportionate share of the expenses incurred by lead and liaison counsel through the date of any judgment in or termination of his or her case ...." Pretrial Order No. 4 at ¶ (2)(e), Appellees' Appendix at 1, 4. The court could have, for instance, subtracted the costs from the settlement itself or have refused to approve the settlement until costs had been paid Lead Counsel.

7. The most practical resolution would likely maintain the status quo as far as the actual payment of costs to Lead Counsel is concerned, *i.e.,* let them retain the funds, rather than engage in any ritualistic return and repayment of funds following a new order.