831 F.2d 33
 1987-2 Trade Cases 67,750, 9 Fed.R.Serv.3d 471
 The CORPORATION OF LLOYD'S, a United Kingdom Corporation,
and Underwriting Members of Lloyd's, an
Association of Individuals, Plaintiffs-Appellees,
v.
LLOYD'S U.S., an Unincorporated Association of Individuals,
Partnerships or Associations of Individuals; et
al., Defendants-Appellants,
LeBoeuf, Lamb, Leiby & MacRae, Esquires, and Thomas M.
Dawson, Intervenors.
 No. 359, Docket 87-7277.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 2, 1987.
Decided Oct. 5, 1987.
 
 Frederick R. Dettmer, New York City (LeBoeuf, Lamb, Leiby & MacRae, Michael A. Ellenberg, Leon E. Roday, of counsel), for intervenors.
 Victoria Cundiff, New York City (Milgrim Thomajan & Lee, P.C., Samuel D. Rosen, Lucy Prashker, Scott E. Thompson, of counsel), for defendants-appellants.
 Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 Lloyd's U.S. appeals from two orders of the United States District Court for the Southern District of New York, Peter K. Leisure, J., which permitted intervenors LeBoeuf, Lamb, Leiby & MacRae (LeBoeuf) in this bitterly-contested litigation not to respond to certain discovery requests by Lloyd's U.S. on the basis of attorney-client privilege or the work-product doctrine, and which denied Lloyd's U.S. costs and fees.[1] For the reasons set out below, we vacate the order denying discovery and remand to the district court for clarification. We affirm the denial of costs and fees.
 
 I. Background
 
 2
 This discovery proceeding arises out of a suit pending in the United States District Court for the Western District of Texas brought by the Corporation of Lloyd's and the Underwriting Members of Lloyd's (collectively, Lloyd's London) against the unrelated Lloyd's U.S., charging trademark infringement. Lloyd's U.S. counterclaimed for antitrust violations, alleging that Lloyd's London, in part through its counsel LeBoeuf, had communicated false information about Lloyd's U.S. to third parties in an attempt to drive Lloyd's U.S. out of business. Lloyd's U.S. initiated discovery of Lloyd's London in Texas, and in October 1986, served LeBoeuf with a subpoena in New York, where its main office is located, seeking witnesses and documents. After a number of skirmishes, LeBoeuf produced some material and refused to produce 79 documents, claiming they were protected by the attorney-client privilege or the attorney work-product doctrine. Seventy-one of these documents are in dispute before us. On March 2, 1987, following an incamera inspection of the documents, Judge Leisure directed LeBoeuf to produce eight of the documents in original form and 18 in redacted form. Judge Leisure denied any discovery of the remaining 53 documents "based on the present record of this matter" but did not indicate his reasoning. On March 27, 1987, Judge Leisure refused to sanction LeBoeuf for discovery violations. Lloyd's U.S. has appealed the portion of the order that denied discovery of the 71 documents in whole or in part, and the order denying sanctions. Lloyd's London has not appealed from the grant of discovery of the remaining eight documents.
 
 
 3
 Meanwhile, discovery has been proceeding in Texas. On June 5, 1987, a special master in the Western District of Texas ordered Lloyd's London to "provide full discovery of any communications between [themselves] and LeBoeuf ... concerning plaintiffs' efforts to discourage anyone from doing business with any defendants ... [or] plaintiffs' contacts with state insurance regulatory bodies." The master also denied Lloyd's U.S. costs and attorney's fees. On August 10, 1987, the master supplemented his order with findings of fact and conclusions of law making clear that his order was based on the crime-fraud exception to the privilege and work-product doctrines. See J. Moore, J. Lucas & G. Grotheer, Jr., 4 Moore's Federal Practice paragraphs 26.60, 26.64 (2d Ed.1986). However, the master noted cryptically that the "documents at issue here are not being examined individually or in-camera at this time. Plaintiffs are not precluded from raising these issues later on." Counsel informed us at oral argument that Lloyd's U.S. has also subpoenaed the disputed documents from Lloyd's London in Texas.
 
 II. Appealability
 
 4
 Initially, we note that Judge Leisure's order denying discovery is appealable under the Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2d Cir.1967), exception to the usual rule that discovery orders are not immediately appealable because they are not final orders. American Express Warehousing, Ltd. v. Transamerica Insurance Co., 380 F.2d 277 (2d Cir.1967). Republic Gear holds that orders denying discovery of non-parties in suits pending in other jurisdictions are immediately appealable. The proceedings pending in Texas are thus no bar to our jurisdiction. More challenging is the possibility implied in Judge Leisure's order "based on the present record of this matter" that further proceedings may occur in New York. However, the quoted phrase may be interpreted as meaning little more than the judge would have decided the motion differently had the record before him been different. Alternatively, the phrase may mean that some documents were work product not discoverable at the time because Lloyd's U.S. had failed to show an inability to obtain them by other means without undue hardship, as required by Fed.R.Civ.P. 26(b)(3). Even under this interpretation, we would certainly have jurisdiction to consider claims of privilege. Moreover, even if we were so inclined, we could not divide the case so neatly because the district court order does not specify which documents are protected by privilege and which by work-product. We therefore conclude that we have jurisdiction to hear this appeal.
 
 
 5
 The order denying sanctions is appealable as ancillary to the order denying discovery.
 
 III. Order Denying Discovery
 
 6
 Appellants and appellees disagree on the standard for review of work-product or privilege claims. Appellees claim the appropriate standard is abuse of discretion. Appellants counter that whether a document is privileged or a work product is a legal question subject to de novo review. Alternatively, appellants argue that even if abuse of discretion is the proper standard, basing a decision on an erroneous interpretion of the law is per se abuse.
 
 
 7
 We do not reach the issue because on the present record we cannot determine which specific legal rules the district court applied. The order does not describe which documents or parts of documents were withheld because of privilege and which because of work-product. On appeal, LeBoeuf identified the documents that it claimed are work product and those that it claimed are privileged, but this list cannot substitute for a finding on the record by a district court. Moreover, the order does not explain which, if any, aspects of the work-product doctrine (e.g., substantial need, inability to obtain the equivalent, or attorney's mental processes) were implicated in the decision to deny full discovery, or whether the decision was prompted by "justice" and "good cause." Fed.R.Civ.P. 26(b)(3), 26(c). Because we cannot tell whether the judge relied on a determinative legal standard or on his discretion, we should not try to determine whether he abused his discretion or whether he correctly applied a legal standard.
 
 
 8
 In Republic Gear, 381 F.2d at 558, this court examined 100 documents and affirmed a two-page district court order denying discovery based on privilege and work product. We could review the present case on the record before us by reading the 71 documents in question, compiling a list of all the potential claims of privilege or work product, reviewing the entire discovery record, and coming up with permissible rationales for granting or denying each discovery request. We could then guess at whether Judge Leisure had relied on one of these rationales. However, we are certainly not required to expend appellate resources by reviewing an order that could easily be clarified by the court that issued it. Reviewing the order now would be wastefully duplicative and would convert this court into a discovery master. Since we have no doubt that the district judge carefully considered the grounds on which he based his decision, we think it best to ask him to provide us with those reasons before we review the documents and his decision.
 
 
 9
 We acknowledge that Rule 26 does not explicitly require findings of fact and conclusions of law. However, it does set out standards for each of the various grounds for denying discovery. We also acknowledge that Rule 52(a) states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." Rule 52(a) is not directly applicable here because the essence of our instruction on remand is only that the district court clarify its order. Indeed, some courts have gone further and have occasionally required findings regarding various kinds of motions. As the District of Columbia Circuit said, "[t]hough findings are not normally required ... we may properly remand for further elucidation when review would be substantially hindered without them." In re FTC Line of Business Report Litigation, 626 F.2d 1022, 1028 n. 34 (D.C.Cir.1980). See also Evans v. Sheraton Park Hotel, 503 F.2d 177, 188 (D.C.Cir.1974).
 
 
 10
 We therefore vacate the order denying discovery and remand so that the district court can clarify the basis of its holdings. We express no opinion as to the merits of the claims of privilege and work-product. Given our disposition of the case, it should be obvious that we do not address questions of substantive discovery law, including the nexus required between litigation and a document in order to support a claim of work product. We note, however, that the facts have changed considerably since the district judge's rulings some six months ago, and what was appropriate then may no longer be appropriate. First, the special master in Texas has issued an order compelling Lloyd's London to obtain the relevant material from LeBoeuf and provide it to Lloyd's U.S., thereby diminishing Lloyd's U.S.'s need for the material here. Second, at oral argument, LeBoeuf agreed to submit to the Texas court's jurisdiction for discovery in this case,[2] further diminishing Lloyd's U.S.'s need for the material in New York. Finally, counsel advised us at oral argument that discovery was scheduled to end September 30 and will not be extended.
 
 
 11
 We could, of course, retain jurisdiction, remand this matter to the district court for clarification of its rulings, and then hear the appeal. In view of the changed situation, however, we prefer to vacate the order to give both Judge Leisure and the Texas court a clean slate. In addition, we believe quite strongly that all discovery motions in this case should be heard in one place, Texas. Of course, vacating the order removes any res judicata or collateral estoppel effect that it might have.
 
 
 12
 LeBoeuf may claim that our decision leaves it at a disadvantage because it has already been compelled to turn over eight documents by an order that we now vacate and because it may be forced, on the other 71 documents, to relitigate in Texas issues on which it has already been successful in whole or in part. However, we do not think that our disposition is unfair to LeBoeuf. As to the eight documents, it did not feel strongly enough about the issues raised to appeal. As to the remaining documents, the Texas master has already ruled that the crime-fraud exception applies to the asserted privileges. Those issues were apparently not decided by Judge Leisure; indeed, counsel indicated that the judge agreed to leave them for the Texas courts, where they are now on appeal to the district court. Depending, of course, on future rulings in the Texas courts on the issue, the effect of Judge Leisure's order may be minimal. Finally, although the possible res judicata/collateral estoppel effect of allowing the entire discovery order to stand is an interesting question, considering it would lead us far astray in view of our strong feeling that speedy disposition of this case before a single judge is just to both parties.
 
 
 13
 Our disposition is also fair to Lloyd's U.S. The Texas courts can determine whether the documents are discoverable at least as easily as we can. If the documents are discoverable, they should be available to Lloyd's U.S. as readily in Texas as they are in New York, since we are confident that any claims about inability to get the LeBoeuf documents through Lloyd's London can be dealt with by the Texas district judge. Moreover, as already noted, during oral argument LeBoeuf agreed to submit to Texas jurisdiction for discovery issues.
 
 IV. Sanctions
 
 14
 Rule 37(a)(4) says that if a motion to compel discovery is granted, the court "shall" assess costs and fees against the party "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." It also says that "[i]f the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred ... in a just manner." Moreover, district judges have broad discretion in imposing sanctions. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam). Cf. Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 n. 7 (2d Cir.1985) ("By employing the imperative 'shall,' [in Fed.R.Civ.P. 11] we believe the drafters intended to stress the mandatory nature of the imposition of sanctions.... Accordingly, where strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions. A natural concomitant of a mandatory imposition of sanctions is a broadened scope of review by the Court of Appeals.... At the same time, however, we note that the district courts retain broad discretion ... [and], therefore, we shall continue to adhere to the 'abuse of discretion' standard.").
 
 
 15
 Although we might not have reached the same decision, Judge Leisure did not abuse his discretion. A judge more familiar with the course of the litigation than we are could find that both sides have acted with surprising lack of courtesy or undue aggressiveness, perhaps influenced by the fact that one side has seen fit to depose some ten attorneys on the other side. We therefore affirm the March 27 order denying sanctions.
 
 
 16
 The March 2 order is vacated and remanded for proceedings not inconsistent with this opinion. The March 27 order is affirmed.
 
 
 
 [1]
 Lloyd's U.S. initially also appealed from a March 12 order relating to a deposition. When it obtained the desired information elsewhere, it withdrew the appeal
 
 
 [2]
 After oral argument, counsel disputed the meaning of this agreement. We express no opinion on the matter